UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:24-CV-23654-RUIZ/LOUIS

MISAEL CARDENAS RICO,

      Plaintiff,

vs.

PERFORMANCE AUTO
WHOLESALERS LLC,
FERNANDO PRADO, AND
MATEO PRADO,

      Defendants.

_____/

**PLAINTIFF'S STATEMENT OF FACTS**
**SUPPORTING HIS MOTION FOR SUMMARY JUDGMENT**

    Plaintiff, Misael Cardenas, pursuant to Local Rule 7.1 and Fed. R. Civ. P. 56, offers the

following statement of undisputed material facts in support of his Motion for Summary Judgment:

**Abbreviations and References**

| | |
|---|---|
| Plaintiff, Misael Cardenas Rico | Mr. Cardenas |
| Declaration of Misael Cardenas | Dec. Cardenas or Exhibit A |
| Deposition, Misael Cardenas Rico | Depo. Cardenas |
| Defendant, Performance Auto Wholesalers, LLC | Performance Auto |
| Deposition, Fernando Ivan Prado taken 6.23.25 | Depo., F. Prado |
| Deposition, Mateo Prado taken 2.25.25 | Depo., M. Prado I |
| Deposition, Mateo Prado taken 7.1.25 (as the Corporate Representative) | Depo, M. Prado II |

**Defendants**

1.      Performance Auto is a Florida limited liability company. (Depo. F. Prado, p. 10; 1-3).

2.      The Defendants, Performance Auto, Fernando Ivan Prado, and Mateo Prado, employed Mr. Cardenas, as the term "employer" is defined by 29 U.S.C. §203(d). [ECF Nos. 28 at ¶13; 29 at ¶13].

3.      Performance Auto is engaged in the business of buying, selling, and consigning classic cars as a motor vehicle dealer in the State of Florida. (Depo. M. Prado II, p. 16: 4-13; Depo. F. Prado, p. 10; 1-3).

4.      Performance Auto regularly purchases, sells, and consigns vehicles that either arrive from outside of the State of Florida or are sent to locations outside of the State of Florida. (Depo. M. Prado I, p. 17:22-24; p. 19:1-16).

5.      "Defendants purchased, brokered, sold, and resold vehicles manufactured and/or assembled outside of the State of Florida that moved through interstate commerce." [ECF Nos. 28 at ¶16; 29 at ¶16].

6.      Performance Auto specializes in classic cars from the '80s, '90s, and 2000s. (Depo. M. Prado II, pp. 10: 7-11; 21: 21-23.)

7.      The "old cars" that Performance Auto sells and buys "always have something" in need of repair. (Depo. M. Prado I, p. 10: 12-19.)

8.      The Defendants taught Mr. Cardenas how to do mechanical work on cars. (Depo. M. Prado I, pp. 21-2: 21-8.)

9.      "[] Defendants regularly and recurrently obtain, solicit, exchange, and send funds to and from outside of the State of Florida, use telephonic transmissions going outside of the State of Florida to conduct business, and transmit electronic information through computers, the Internet, via email, and otherwise outside of the State of Florida." [ECF Nos. 28 at ¶17; 29 at ¶17].

10.      "Defendants also engage in e-commerce through the internet on their website, https://www.performanceautows.com/, which they registered through Tucows Domains Inc. (a foreign corporation)." [ECF Nos. 28 at ¶18; 29 at ¶18].

11.     "Defendants' annual gross revenues derived from this interstate commerce [] exceed[ed] $500,000.00 for the relevant time and/or $125,000.00 for each fiscal quarter in which Plaintiff worked." [ECF Nos. 28 at ¶19; 29 at ¶19].

12.     Mateo Prado testified that he was, and remains, an employee of Performance Auto. (Depo. M. Prado I, p. 6: 11-22.)

13.     Mateo Prado explained that as of February 26, 2025, Performance Auto had two employees: himself and his father. (Depo. M. Prado I, p. 6: 11-22.)

14.     Mateo Prado received a W-2 from Performance Auto. (Depo. M. Prado II, p. 40: 3-7.)

15.     Previously, Performance Auto employed Mr. Cardenas, who was its third employee. (*Id.*)

16.     During the relevant time relevant to this lawsuit, the Defendants employed at least two employees: Mateo Prado and Mr. Cardenas. (*Id.*)


### Mr. Cardenas's Work and Hours Worked

17.     Plaintiff, Misael Cardenas Rico (Mr. Cardenas), was employed by Defendants, Performance Auto Wholesalers, LLC, Fernando Ivan Prado, and Mateo Prado for over a decade. [ECF Nos. 28 at ¶¶2-3, 13; 29 at ¶¶2-3, 13.]

18.     Mr. Cardenas "was in charge of getting the cars prepared, clean, detail[ing], you know, changing little things, you know, wipers, stuff like that." (Depo. M. Prado I, pp. 10-11: 25-3.)

19.     Defendants relied on Mr. Cardenas to prepare vehicles for sale. (Depo. M Prado; pp. 18-19: 17-16.)

20.     The sooner Mr. Cardenas completed his work, the sooner Defendants could market and sell their vehicles. (Depo. F. Prado, pp. 25-26: 18-4.)

21.     Mr. Cardenas's work for the Defendants involved washing, detailing, and performing minor repairs on vehicles. (Dec. of Cardenas, ¶ 6; Exhibit "A".)

22.     Besides washing and detailing vehicles, Mr. Cardenas would regularly and routinely perform cosmetic repairs on exotic cars, such as replacing leather headliners, replacing switches

and buttons, removing and replacing batteries, and performing other minor repairs. (*Id*., at ¶¶ 6-8.)

23.     Mr. Cardenas would routinely replace interior and exterior parts on vehicles that had traveled in interstate commerce or would thereafter travel in interstate commerce with parts purchased from out-of-state merchants.  (Depo. M. Prado II, p. 17:22-24.)

24.     Defendants relied on Mr. Cardenas to bring each vehicle they were marketing for sale back to as close to new condition as possible. (Depo. F. Prado, pp. 25-6: 18-4.)

25.     Defendants could not sell a vehicle and deliver it to its new buyer until after Mr. Cardenas completed his work in restoring it to as close to new condition as possible. (Depo. F. Prado, pp. 25-6: 18-4.)

26.     Defendants would then sell the cars detailed by Mr. Cardenas to customers out of the state of Florida. (Depo. M. Prado II, p.18; 7-12.)

27.     Performance Auto purchased cars from out of state or sometimes from countries such as Spain or countries in Latin America, which were brought to Mr. Cardenas for detailing. (Depo. M. Prado, p. 17:22-24; p. 19:1-16).

28.     Defendants would market vehicles detailed and repaired by Mr. Cardenas to customers online. (Depo. Mateo Prado, p. 24; 23-25).

29.     Mr. Cardenas injured himself while working for the Defendants at their dealership location on June 21, 2024. (Dec. Cardenas, ¶4.)

30.     Within weeks after Mr. Cardenas hurt himself at work and sought workers' compensation benefits, Fernando Ivan Prado terminated Mr. Cardenas's employment on August 6, 2024. (Exhibit "B".)

**Plaintiff's  Hours Worked**

31.     The online information available for the Defendants' business identifies its hours as Monday to Friday, from 10:00 a.m. to 7:00 p.m., and from 10:30 a.m. to 3:00 p.m., on Saturdays, excluding holidays. (Depo. M. Prado II, p. 31: 4-13).

32.     Performance Auto is closed on "New Year's Day, Memorial, 4th of July, Veterans Day, Thanksgiving, Christmas," Memorial Day, and Labor Day. (Depo. M. Prado II, p. 31: 16-25.)

33.     Defendants did not require Mr. Cardenas to document the times he started or stopped working during his employment with the Defendants. (Depo. F. Prado, pp. 13-14: 25-7.)

34.     As a result, neither Defendants nor Mr. Cardenas documented the times he worked each day or the hours he worked each week. (Dec. Cardenas ¶__.)

35.     Although Defendants had video cameras at work, Defendants do not have any records identifying when Mr. Cardenas started working, took a break, resumed working, or ceased working for any of the days he worked for the Defendants. (Depo. F. Prado, pp. 19-20: 8-11.)

36.     The Defendants did not keep records of when Mr. Cardenas arrived at or left work. (Depo. Fernando Prado, p. 20: 13-20).

37.     Defendants scheduled Mr. Cardenas to work from 10:00 a.m. to 6:00 p.m. Monday through Friday. (Dep. F. Prado, p. 1-11.)

38.     Defendants also required Mr. Cardenas to work every other Saturday. (Depo. F. Prado, p. 16: 2-5).

39.     On Saturdays, Mr. Cardenas would perform that work at the Performance Auto dealership or at Fernado Ivan Prado's house. (Depo. M. Prado II, pp. 32: 13-16; 40-1: 18-10).

40.     Mr. Cardenas would "alternate Saturdays. One on, one off." (Depo. F. Prado, p. 16: 2-3; Depo. M. Prado I, p. 18: 3-7.)

41.     Defendants scheduled Mr. Cardenas to take a one-hour lunch break (Depo. F. Prado, p. 15: 1-11).

42.     According to Mateo Prado, the Defendants "didn't really keep track" of any lunch break Mr. Cardenas took. (Depo. M. Prado, pp. 33-4: 13-5.)

43.     In fact, Mr. Cardenas never took breaks lasting fifteen minutes or longer, whether to eat a meal or for any other reason. (Dec. of Cardenas at ¶ 20, Exhibit "A".)

44.     Mr. Cardenas did not have a traditional lunch break and ate while completing work. (Exhibit "A" Deposition of Misael Cardenas).

45.     The Defendants gave Mr. Cardenas the keys to the shop as well as the alarm code. (Depo. Mateo Prado, p. 32; 23-25).

46.     Because he had the key and alarm code, he could let himself in in the morning and close up the shop at the end of the day. (Depo. Fernando Prado, p. 12: 15-19).

47.     He was the first to arrive to work each day and the last to leave.  (Exhibit "A" Decl. of Misael Cardenas).

48.     Mr. Cardenas estimates that he worked approximately 44 hours a week for Defendants. (Exhibit "A" Decl. of Misael Cardenas).


### Defendants' Pay Practices and Payments to Mr. Cardenas

49.     Defendants paid Mr. Cardenas a salary $3,500 a month, which they paid as follows:

    a.  One to him every two weeks from Performance Auto Wholesalers, LLC, in the gross amount of $1,050.00 each, from which taxes and withholdings were deducted and for which he received a W-2;

    b.  One to him every two weeks from Performance Auto Wholesalers, LLC for $450.00, paid as 1099 income to Mr. Cardenas, on which Defendants noted that the payments were for "car repairs"; and

    c.  One check for $500 on the 15th of each month, also paid as 1099 income to Mr. Cardenas.

(Depo. M. Prado II, pp. 21: 3-25; 27: 14-25.)

50.     Defendants never consulted with any tax or legal professional about whether it was appropriate for Performance Auto to pay Mr. Cardenas as salary with a payroll check and a series of 1099 checks. (Depo. M. Prado II, p. 22: 1-6; Depo. F. Prado, p. 13: 21-24).

51.     Likewise, Defendants never consulted with any tax or legal professional to determine whether they were properly paying Mr. Cardenas. (Depo. M. Prado I, p. 22: 7-11.)

52.     Defendants had no written policies or procedures Mr. Cardenas was to follow. (Depo. M. Prado I, p. 22: 16-18).

53.     The defendants never paid Mr. Cardenas any overtime wages because they claim that he did not work 40 hours a week. (Depo. M. Prado II, p. 32: 17-22.)

54.     Cardenas does not seek compensation one week in December 2023 and 4 weeks in December 2024 where he went on vacation. (Dec. of Cardenas, ¶ 30; Exhibit "A".)

55.     Mr. Cardenas is entitled to recover $9.18 per hour for 4 hours each week for 129 weeks, for a total of $4,736.88.