STATE OF FLORIDA
DIVISION OF ADMINISTRATIVE HEARINGS
OFFICE OF THE JUDGES OF COMPENSATION CLAIMS
MIAMI DISTRICT OFFICE

Misael Cardenas Rico,
    Employee/Claimant,

vs.

OJCC Case No.: 24-024988ERA

Accident date: 06/21/2024

Performance Auto Wholesalers LLC/,
    Employer/Carrier/Servicing Agent.

Judge: Edward Almeyda

_____/

## FINAL COMPENSATION ORDER

This matter came for a final hearing originally on 4/21/2025, and to a conclusion on 9/25/2025. The original hearing was on bifurcated pursuant to an order, but was not concluded to permit the parties to present complete medical evidence on all issues. The Claimant was represented by Ronald Rodman, Esquire, and the Employer by Bruce Burke, Esquire.

The adjudicated PFBs are dated 10/15/2024 and 1/24/2025.

DOCUMENTARY EVIDENCE:
    Claimant:
1. Mateo Prado's deposition (35)
2. Excellence records (57, 96)
3. Baptist Records (58, 97, 94)
4. Ceda's records (59, 95)
5. Dr. Penaherrera's deposition (60)
6. Dr. Lazzarin's depositions (61, 62)
7. Earnings and payroll records (89)
8. Photographs, medical records and hospital bill (90)
9. Petitions (1, 15)

Employer:
a. Dr. Roush's deposition (91)

Judge's exhibits for identification:
1. Claimant's trial memo (92, 33)
2. E/C trial memo (93, 36)
3. Order continuing final hearing (42)
4. Order bifurcating final hearing (24)

5. Pretrials (22, 23, 71, 72)

CLAIMS/DEFENSES:
Claims:
1. Authorization of Medical Care/Testing/ Primary Care Physician
2. Adjustment of AWW/Starting Date: 6/21/2024
3. Temporary Total Disability Benefits/Starting Date: 6/21/2024
4. Temporary Partial Disability Benefits/Starting Date: 6/21/2024
5. Compensability Details: Employee/Claimant requests compensability of services rendered at South Miami Hospital, Excellence Healthcare, Baptist Hospital and Doral Urgent Care. Claimant has had to seek care at these facilities since Employer has not provided any medical care.
6. Authorization of Medical Care/Testing/Orthopedic Surgery: - Employee/Claimant requests authorization for arthroscopic surgery of left shoulder as recommended by Dr. Yelisa Rivero of Ceda Orthopedic Group.
7. PICA

Defenses:
1. No employer/employee relationship.
2. No accident in the course and scope of employment.
3. The treatment requested by the claimant is not medically necessary.
4. The MCC of the accident and need for treatment is not the employment.
5. Voluntary limitation of income.
6. Failure to timely report the accident.
7. No admissible evidence of disability or injury.
8. Failure to complete EERs
9. The cause of loss of earnings is not the employment.
10. Claimant lacks taxable earnings and otherwise cannot provide AWW
11. Past medical care for claimant does not qualify as emergency medical care and is not treating an emergency medical condition.
12. Claimant did not request authorization prior to treatment.
13. Deny PICA

## FINDINGS OF FACTS AND CONCLUSIONS OF LAW

1. This matter involves an employer which failed to purchase worker's compensation insurance, and who is denying the totality of a claim by a twelve-year employee who fell and injured himself at work.

2. CLAIMANT: he testified live at the time of the final hearings. He had been an employee of the Employer for ten years when the accident happened. He was paid by check. His duties were to wash cars, charge batteries, and do general maintenance. He worked from 10:00

am to 6:00 pm weekdays, and Saturday from 10:00am to 1:00pm. He had keys to the warehouse as well as a passcode.

3. On the day of the accident, he arrived shortly before 10:00am and when performing his chores tangled with an electrical cord attached to the fence. He then put out his right hand, and fell into a water cooler/fountain. His wind was knocked out when he hit the cooler. At that moment Ivan came in; he then had blood running down his arm and told Ivan what had happened.

4. Ivan then said he was taking him to a doctor, and took him to Baptist Hospital Clinic. There he received x-rays and was given pain medicine. Ivan drove him back to the dealership, where Mateo and Albaro were present. This is the only accident which he has had while working for this employer.

5. He was paid and given a W-2 tax form. He did not furnish the working tools. The Employer told him which cars to service. After the accident he did not return to work as he could not do so. He received a letter of termination in August (2024).

6. The accident happened during regular work hours. In addition to these regular hours, he also fixed cars on the weekend. Sometimes he got a 1099 for part of his salary.

7. MATEO PRADO: he has worked for the Employer last 12 years, and his father is his supervisor. He was not at the shop when the accident happened, but knew that the father took the Claimant to the clinic. The accident happened shortly after 10:00am. The Claimant's work hours were from 10:00am to 6:00 pm. His father told him that the Claimant tripped over an extension cord in the warehouse.

8. He does not believe the accident happened because there was no blood and the claimant only had a huge bruise. The Claimant was paid with a 1099 sometimes.

9. In his deposition he testified that he holds a dealer's license for Performance Auto Wholesalers. The owner is Fernando Ivan Prado, his father. There were more than two or more employees there, and the Claimant was the third employee.

10. When the Claimant got back from the hospital with his father, he did not show him anything and did not seem like he was hurting. He did have a hospital bill in the sum of $1550.00 for stitches. He disbelieved that the Claimant had an accident, which he explained as:

> "One, when my father got here, he was holding under his arm and jumping up and down like it had just happened. However, there was no blood anywhere. There was no blood where it happened, what made the puncture, nowhere. Everything was set up nicely. Nothing had fallen over. There was nothing to indicate that something had just happened. He just opened the door, and he was there just jumping in pain.
> Secondly, he -- we have basically heard from somebody that lives with him that he was planning on suing us for multiple things before he even got injured."

11. The person who told him about the Claimant planning to sue was the Claimant's girlfriend, who is also a housecleaner for the father. He never asked the Claimant what happened.

12. He testified to the number of employees with the Employer as follows:

*Q. And were there ever more than two employees at Performance Auto?*
A. Yeah, when Misael Cardenas Rico was part of it. That was the third employee.
deposition at page 7)

13. The Claimant got paid with both a W-2 and a 1099, as he was given compensation for other things. He was paid $3500.00 per month. The Claimant was a trusted employee for 12 years. He offered to pay the hospital bill, but the Claimant said not to bother as his credit was bad. He never offered to take the Claimant back to a doctor, and does not know how the Claimant was to take out the stitches or get other treatment. The Claimant was paid in full salary until he was fired. After the accident the Claimant never came back to work. He was fired because of financial hardship on the company.

14. During the time the Claimant was collecting payment after the accident he was also working for Mayor Cars.

15. DR. LAZZARIN: he is the Claimants orthopedic IME who was twice deposed. He was shown a photograph of the injury which was taken before the suturing, and it showed a laceration and bruised areas around the laceration.

16. The Claimant also stated that he twisted his knee as he went down -- causing him to go down. He had pains in his knee, his neck and his axilla, left arm and right knee. There was nothing inconsistent with the medical records shown to him and the history of the accident.

17. On examination he had reduced range of motion to the left shoulder, tenderness to the subacromial space, which indicates that the area is swollen. He also had tenderness on palpation of the trapezius muscles, moderate tenderness of the cervical spine with full range of motion. On the knee he had marked medial joint tenderness.

18. The x-rays demonstrated questionable non-displaced fracture of the left 5th rib. The MRI showed two cervical disc herniations at the C5-6 level and C6-7 level. An MRI of the right knee showed tear of the posterior horn of the medial meniscus. An MRI of the shoulder showed a labrum tear. These injuries were related to the accident.

19. Dr. Lazzarin recommended surgery to the knee, possible cervical surgery if conservative treatment failed, and treatment to the axilla. This treatment was due to the injuries at the time of the accident.

20. He reviewed the prior treatment and concluded that it was reasonable and necessary resulting from the accident. The Claimant was not at MMI and had work restrictions on no lifting over 15 to 20 pounds and limited walking. He opined that those restrictions started on the date of injury. He attributes the knee and cervical MRI changes to the accident because the Claimant had

no symptoms there before he fell at the water cooler. He said the accident one hundred percent caused his injuries as there was no other cause.

21. In arriving at these opinions, he applied accepted methodology utilized by orthopedic surgeons regarding causation.

22. In the diagnosis whether he bled or not is totally irrelevant.

23. DR. ROUSH: he is the Employer's orthopedic IME. He examined the Claimant on 8/25/2025. He was asked about the lack of bleeding, and he said that bleeding depends on how large a laceration might have been. He did not expect that there would be blood on or around the water fountain. He did not have any debate about the laceration closure and also some conservative care to quell some of the inflammation and swelling. That treatment was reasonable.

24. Roush testified that the mechanism of injury is inconsistent with the patient's current complaints. Given its inconsistency between the reported mechanism and objective findings, it is more probable that the injuries were sustained outside of the scope of employment and were most likely pre-existing. The major contributing cause of the current musculoskeletal complaints appears unrelated to his work-related injury that he sustained on 06/21/2024. The patient is currently working full-time without any documented restrictions. There is no objective basis to oppose any work limitation. The recommended treatments, such as injections or arthroscopes, are not medically necessary.

25. Conservative care to include physical therapy three to four times a week for the next four to six weeks, he recommended. The Claimant is not at MMI, and the Claimant has no work restrictions. He concluded that the Claimant had exaggerated symptoms.

26. DR. PENAHERRERA: he is a physician at Baptist Health. He saw the Claimant on 6/21/2024 at the Doral Baptist Health clinic for a laceration of the left axilla. The Claimant reported that when he fell, he hit the key from the water spout with his armpit. The injury was acute. X-rays revealed a questionable nondisplaced fracture of the lateral portion of the left 5th

rib. The final diagnosis was laceration of the arm and a rib fracture. These were consistent with a fall as described by the Claimant. The Claimant was instructed to return for suture removal.

MEDICAL RECORDS.

27. THE BAPTIST HOSPITAL: this is part of the South Miami Hospital system. Its records show an admission to the Emergency Room on 6/24/2024 for a laceration in the axilla and a fractured rib. He returned on 6/30/2024 for a recheck. On both visits he was prescribed medication. The bill in evidence is $1550.00.

28. EXCELLENCE HEALTHCARE: he went there on 7/17/2024 for the injury and continued to treat there until 9/30/2024.

29. CEDA CLINIC; he was treated there from 12/27/2024 with a diagnosis of injuries to the knee, ribs, neck, shoulder, and axilla. Their bills are in evidence total $7470.00.

30. SOUTH MIAMI HOSPITAL: He was treated. There by Dr. Penaherrera on 6/21/2024. The record indicates that the Claimant had several acute life-threatening diagnoses including rib injury and pneumothorax. The laceration was repaired. He returned on 6/26/20/2024 for follow up.

ANALYSIS

31. The beginning points of this analysis are whether the Claimant was an employee of Performance Auto and whether he suffered an accident arising out of the employment and in the course of the employment. Performance, through their employee, Mateo Prado, are denying all of the above.

32. The undisputed testimony is that the Claimant worked for Performance twelve years and had substantial responsibility as he had to open a shop with many expensive automobiles and also maintain them. He was paid with taxes withdrawn and given a W-2 for tax purposes. It is

specifically unknown why Mr. Mateo Prado contends that the Claimant was not an employee, as he did not specify that he was an independent contractor.

33. The Claimant testified that Performance furnished the tools of his trade and that he was scheduled to work a set number of hours weekly. FS 440.02 (15)(a) defines an employee as: "any person who receives remuneration from an employer for the performance of any work or service while engaged in any employment under any appointment or contract for hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed, and includes, but is not limited to, aliens and minors." I find that the Claimant meets this statutory definition.

34. For him to be an independent contractor Performance would have been burdened with proving the seven requirements of FS 440.02 (15)(d), which they did not do. As such I find that Performance is the employer of the Claimant at the time of the accident.

35. I accept the Claimant's testimony over the contrary one of Mateo Prado, that when he fell he was in the course of the employment. Mateo did not witness this accident. His testimony at the second hearing describing the outlets is not the same as his testimony in the first hearing. The Claimant was to work from 10:00 am; and he testified that he arrived at the shop shortly before ten and fell then. There is no credible contrary testimony that he was not in the course of his employment when he fell.

36. I do not find Mateo's testimony credible. He was not present when this accident happened. The entirety of his testimony is speculative as to his belief to whatever happened or did not happen. It is noted that Mateo testified that he is an employee of Performance, not in management or an officer, and as such did not establish that he had the necessary corporate authority to represent Performance. He does have a clear bias, as his employer, Performance, did

not have worker's compensation insurance. His father is a corporate officer of Performance (owner) and is logical that Mateo would want to protect his father's interest. At best Mateo's testimony is a biased opinion of events which he did not witness.

37. Significant in this analysis is the lack of testimony from Ivan Prado, an officer and owner of Performance, and the person with this organization with the best knowledge of the events. He spoke with the Claimant shortly after the occurrence of the fall, took the Claimant to the hospital, and agreed to pay for the hospital bill.

38. I accept the Claimant's testimony that he tripped and fell hitting his arm pit with the spigot of a water fountain, while performing his job duties in opening the shop. I find that the spigot struck the Claimant's arm pit and cut the skin. It is inconsequential whether the spigot is made of plastic or rubber, as that is what struck the arm pit (axilla) and caused a laceration. The suggestions from Mateo that the accident happened elsewhere are at best not substantiated by any credible evidence and at worse non-sensical. The photographs of the laceration and bruises are consistent with the Claimant's version of the accident.

39. Therefore, I find that the accident happened in the course of the employment and arose out of the employment.

40. I further find that the Claimants average weekly wage is $3500.00 (monthly pay) divided by 4.3, or $813.95. He reported this income to the Internal Revenue, according to his accepted testimony, therefore it is included in the average weekly wage.

41. Performance, as the employer, challenges the Claimant's injuries relying on the opinion of Dr. Roush, their IME. Dr. Roush did not dispute the occurrence of an accident or the laceration of the axilla. He disputes the injuries to the neck, ribs, shoulder and knee, based on his one-time examination.

42. Contrary to this opinion is the testimony of several physicians, Dr. Lazzarin and Dr. Penaherrera, which are consistent with the Claimant's description of the accident, the photographs, and therefore, more logical and reasonable. I specifically note the testimony of Dr. Penaherrera, who examined and treated the Claimant immediately after the accident.

43. In accepting Dr. Lazzarin's opinion I find that this accident caused a laceration to the Claimants left axilla, bruises in the upper arm and side, fractured ribs, shoulder injury, neck injury and knee injury. The accident is the major contributing cause of these injuries. The Claimant testified that he fell twice. The first time when he struck the water fountain, and the second one when he then fell to the ground twisting his knee and causing all his other injuries.

44. The testimony of Dr. Lazzarin supports the conclusion the treatment given to the Claimant by Ceda, Baptist Hospital and South Miami Hospital were all reasonable and necessary. I find that the treatment at Baptist Hospital was authorized by the Employer, as its officer, Ivan, took the Claimant there and agreed to pay the bill in the sum of $1550.00. Thus, I conclude that the Employer was on notice of the need for treatment. There is also no doubt that said treatment was emergency in nature, as Dr. Penaherrera considered this to be emergency in nature, as seen, in the hospital notes.

45. The Employer refused to authorize further treatment and refused to pay the bill for the initial treatment event though Ivan (the owner) had agreed to do so. Therefore, the Claimant had no alternative but to seek treatment on his own, which treatment I find to be reasonable and necessary. This case is governed by the doctrine enunciated in *Parodi v. Florida Contracting*, 16 So.3d 958 (Fla. 1st DCA 2009), where in a situation such as this one, the employer is responsible for payment of medical treatment not specifically authorized.

46. The Employer failed to prove that the Claimant limited his income, as the Claimant testified that he is working; and the evidence only establishes a two-week period of loss of income, when he was not paid by Performance before he started working again. I further find that the Employer had no basis in alleging that the Claimant failed to report the accident, as he was taken to the hospital right after it happened by the owner of the Employer. Failure to obtain authorization defense is denied as Ivan, an officer of the Employer, took the Claimant to the hospital.

47. The Employer alleged that the Claimant failed to file earnings report. But they failed to prove that those were sent to him, and the Claimant in fact filed those which are in evidence found in docket number 89.

48. I find that the Claimant obtained benefits via this order and is entitled to fees and costs to be paid by the Employer to be determined at a later date.

WHEREFORE, IT IS ORDERED:

1. This is a compensable accident.
2. The injuries are to the left axilla, left arm, right knee, ribs, neck and left shoulder.
3. The Claimant is entitled to two weeks of temporary partial disability based on no earnings and an average weekly wage of $813.95. this is to be paid with penalties and interest.
4. The E/C shall immediately authorize medical treatment to the injured body parts by physicians properly qualified to treat the injuries, including arthroscopic surgery to the shoulder.
5. The E/C shall immediately reimburse the Claimant for the bill in the sum of $1550.00 from Baptist/South Miami Hospital, and $7470.00 to Ceda.
6. The E/C is responsible for payment of fees and costs to be determined later.

DONE AND SERVED this 30th day of September, 2025, in Miami, Dade County, Florida.

*Edward P. Almeyda*
Edward Almeyda
Judge of Compensation Claims
Division of Administrative Hearings

Office of the Judges of Compensation Claims
Miami District Office
401 Northwest 2nd Avenue, Suite N-918
Miami, Florida  33128-3902
(305) 377-5413
www.jcc.state.fl.us

COPIES FURNISHED:

Misael Cardenas Rico
8000 SW 149th Avenue, Apt. A408
Miami, FL 33193

Performance Auto Wholesalers LLC
10859 NW 21st Street
Miami, FL  33172

Ronald Rodman
Friedman Rodman Frank & Estrada, P.A.
3636 West Flagler Street
Miami, FL  33135
ronrod@frflawgroup.com,malamo@frflawgroup.com

Bruce Donald Burk, Jr.
Burk Law Firm, PLLC
100 2nd Ave N, Ste 300
St. Petersburg, FL  33701
bburk@burkfirm.com,paralegal@burkfirm.com