## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 1:24-cv-23654-RAR

MISAEL CARDENAS,

     Plaintiff,

v.

PERFORMANCE AUTO
WHOLESALERS LLC, *et al.*,

     Defendants.

_____/

## REPORT AND RECOMMENDATIONS

**THIS MATTER** comes before the Court on Plaintiff Misael Cardenas's Motion for Summary Judgment (ECF No. 44). This matter was referred to the undersigned United States Magistrate Judge by the Honorable Rodolfo A. Ruiz, II, United States District Judge to issue a Report and Recommendations. (ECF No. 52). Upon consideration of the briefing, materials submitted by the Parties in conjunction therewith, and the record as a whole, and being otherwise fully advised in the premises, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, (ECF No. 44), be **GRANTED** to the extent it is unopposed and otherwise **DENIED**.

## I.    BACKGROUND

Unless otherwise noted, the following facts are undisputed.

Plaintiff, Mr. Misael Cardenas Rico, commenced his employment at Performance Auto Wholesalers, LLC ("Performance Auto"), a car dealership located in Miami, Florida, around late 2012. Performance Auto was run by three individuals during Plaintiff's tenure: Fernando Ivan Prado, an owner of the dealership, his son, Mateo Prado, (collectively, with Performance Auto,

"Defendants"), and Plaintiff himself. Performance Auto obtained cars primarily on consignment as well as via purchase. Upon receipt of a given car, Performance Auto would clean the car, make minor repairs as necessary, and would thereafter locate buyers and coordinate the car's transfer to its buyer via a broker. Performance Auto did not receive cars, via purchase or consignment, with a designated buyer already in mind. The Parties dispute the regularity with which cars received by Performance Auto would be sold to somebody in the state of Florida.

Plaintiff's regular job responsibilities at Performance Auto consisted of detailing the cars obtained by the company. He would, for example, clean the inside of the cars. (ECF No. 56-1 at 25:19–22); *see also* (ECF No. 41 at 11:1–3) (testifying that Plaintiff "was in charge of getting the cars, prepared, clean, detail[ed] . . . changing little thing[s], you know, wipers, stuff like that"). When Plaintiff required materials with which to detail cars, he would notify Mateo Prado, who would order those materials to be shipped to Performance Auto. The Parties dispute whether Plaintiff would on occasion perform light cosmetic repairs where needed. (ECF No. 44-1 ¶ 22). During busy stretches, Defendants would direct Plaintiff regarding what work to prioritize. Plaintiff never left the state of Florida pursuant to his employment. (ECF No. 56-1 at 33:15–34:3).

Plaintiff was initially compensated at a rate below $3,000.00 per month. At some point, he requested a raise from Fernando Ivan Prado, and his salary was increased to $3,000.00 per month and, thereafter, to $3,500.00 per month. (ECF Nos. 40 at 28:16–24, 39 at 38:14–17). Plaintiff was scheduled to work from 10:00 A.M. to 6:00 P.M. each weekday, with one hour allotted for a daily lunch break. The Parties dispute Plaintiff's real working hours during the workweek. For an indeterminate period of his employment, Plaintiff also worked approximately three hours, every other Saturday: "one on, one off." (ECF No. 39 at 16:4–5). He began working Saturdays at the Performance Auto dealership itself, when Mateo would leave the dealership to meet with

customers "and there was nobody to stay at the business." (ECF No. 56-1 at 43:18–25). Over time, Plaintiff would either work at the dealership or perform generalized tasks, "whatever it may be," at Fernando Ivan Prado's residence. (ECF No. 41 at 40:22–41:2); (ECF No. 56-1 at 43:18–44:1) ("[S]ometimes on the Saturdays, they would tell me, 'don't come to the dealer. Just go to my home and clean there.' I would clean the pool, the roof. I also cleaned the house."). Before the "one on, one off" weekend schedule, there was a period of time during which Plaintiff indicates, but the Parties dispute, that he worked every Saturday. *See* (ECF No. 40 at 33:3–10). And in the six months preceding the end of his employment, Plaintiff indicated that he worked "one Saturday per month" rather than every other Saturday. (ECF No. 56-1 at 39:15–42:17).

Plaintiff claims that he worked "44 hours a week, or 4 hours of overtime a week" on average over the full course of his employment. (Cardenas Decl., ECF No. 44-2 ¶ 28). Neither Defendants nor Plaintiff maintained documentation recording the number of hours Plaintiff worked. (*Id.* ¶ 25). While Performance Auto maintained on-site cameras that would monitor the times at which Plaintiff began and ended his workdays at Performance Auto, the cameras overwrote their recorded footage every six months, eliminating their footage. (ECF No. 39 at 14:8–25).

Plaintiff's employment was terminated on August 6, 2024, less than two months after he suffered a workplace injury. (ECF Nos. 44-3, 44 ¶ 32). Plaintiff filed a petition for workers' compensation benefits with the Florida Division of Administrative Hearings on October 15, 2024, in case number 24-024988ERA. (ECF No. 44-1 ¶ 1). Plaintiff then brought this lawsuit in federal court on September 23, 2024. (ECF No. 1). Plaintiff filed the operative Amended Complaint on January 16, 2025, asserting one Count of failure to pay overtime wages under the FLSA. (ECF No. 28). Defendants denied in their Answer, (ECF No. 28), that they employed two or more employees, that Plaintiff was entitled to individual coverage under the FLSA, that Plaintiff is owed

overtime wages for working more than 40 hours a week for them, and that Defendants intentionally or recklessly failed to pay Plaintiff overtime wages. (ECF No. 44 at 3).

On July 22, 2025, Plaintiff filed the present Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and Rule 56.1 of the Local Rules for the Southern District of Florida. (ECF No. 44). Defendant filed a Response, (ECF No. 57), to which Plaintiff filed a Reply, (ECF No. 63). Plaintiff moves for summary judgment on multiple issues: (1) whether Plaintiff was a non-exempt employee of Defendants under the FLSA; (2) whether Defendants were Plaintiff's employers under the FLSA; (3) whether the FLSA applies to the Parties' employer-employee relationship, via either individual coverage or enterprise coverage; (4) whether Plaintiff worked in excess of 40 hours per week; (5) whether Defendants willfully violated the FLSA such that the applicable statute of limitations is three rather than two years; and (6) whether Plaintiff is entitled to liquidated damages as a consequence of Defendants' alleged FLSA violation.

## II.   LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears "the stringent burden of establishing the absence of a genuine issue of material fact." *Suave v. Lamberti*, 597 F. Supp. 2d 1312, 1315 (S.D. Fla. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The movant "bears the initial responsibility of informing the district court of the basis for its motion" and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. To discharge this burden, the movant must identify an absence of evidence to support the nonmoving party's

4

case. *Id.* at 325. After the movant has met his burden under Rule 56(c), the burden of production shifts; the nonmoving party then "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must come forward with "specific facts showing a genuine issue for trial." *Id.* at 587.

An issue of fact "is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (internal quotations omitted). Furthermore, "[a]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Southeast*, 492 F. App'x 16, 26 (11th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party." *Id.* at 26–27 (citing *Anderson*, 477 U.S. at 252). Accordingly, if the moving party shows "that, on all the essential elements of its case on which it bears the burden of proof at trial no reasonable jury could find for the nonmoving party," then "it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Rich v. Sec'y, Fla. Dept. of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013) (citation omitted).

## III.  DISCUSSION

### A.  Employer and Employee Status

Plaintiff moves for summary judgment on two issues that Defendants do not dispute. First,

that Plaintiff was a non-exempt employee of Defendants, (ECF No. 44 at 5); and second, that the individual Defendants, Fernando Ivan Prado and Mateo Prado, were Plaintiff's "employers" under the FLSA, (*id.*at 9). Defendants concede both that Plaintiff was a non-exempt employee of Defendants, (ECF No. 57 at 3–4), and that Defendants were Plaintiff's employers within the meaning of the FLSA, (*id.* at 11). Defendants note that they admitted these allegations in their Answer and Affirmative Defenses, *see* (ECF No. 29), and that they are effectively non-issues at the summary judgment stage.

"All material facts set forth in the movant's statement filed and supported as required [] will be deemed admitted unless controverted by the opposing party's statement." S.D. Fla. L.R. 56.1(b). Here, Defendants' joint employer status, and Plaintiff's status as a non-exempt employer, are uncontroverted. In view of Defendants' concession, the undersigned recommends that summary judgment be **GRANTED** as to (a) Plaintiff's status as a non-exempt employee and (b) Defendants' status as joint employers of Plaintiff.

### B.     Whether the FLSA Applies

Employees covered by the FLSA are entitled to receive overtime pay for each hour worked over forty (40) in a week. 29 U.S.C. § 207. An individual must demonstrate both coverage and entitlement to overtime pay. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011). Thus, to establish a claim for overtime compensation under the FLSA, Mr. Cardenas must show either that he was entitled to individual coverage, as an employee engaged in commerce or in the production of goods for commerce, or that Performance Auto is subject to enterprise coverage, as an enterprise engaged in commerce or in the production of commerce. *See* 29 U.S.C. § 207(a)(1); *see also Thorne v. All Restoration Serv., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006).

### i.   Whether Plaintiff is Entitled to Individual Coverage

When undertaking an individual coverage analysis, the Court analyzes the activities of the employee only and not the business of the employer. *See Overstreet v. N. Shore Corp.*, 318 U.S. 125, 132 (1943) ("The nature of the employer's business is not determinative, because, as we have repeatedly said, the application of the Act depends upon the character of the employees' activities."); *Jones v. Safeway Muffler Serv. Cntr., Inc.*, No. 18-CV-10208, 2019 WL 670073, at *3–4 (E.D. Mich. Feb. 19, 2019).

Plaintiff's Motion seeks to establish individual coverage on the theories that he was "engaged in commerce" and "engaged in the production of goods for commerce." As a preliminary matter, Defendants dispute Plaintiff's entitlement even to proceed on the theory that he was engaged in the production of goods for commerce: because Plaintiff never alleged facts in his Amended Complaint supporting that he engaged in the production of goods for commerce, his claim to individual coverage must proceed, if at all, under the "engaged in commerce" theory that the Amended Complaint does allege. (ECF No. 57 at 5) (citing *Chavez v. Arancedo*, No. 17-cv-20003, ECF No. 96, at *13 (S.D. Fla. Sept. 24, 2018)). Plaintiff's Reply does not deny that the Amended Complaint failed to allege any facts in support of his second theory of individual coverage but argues only that "[t]he 'notice pleading standard' did not require [him] to establish every basis upon which the Court could have jurisdiction – only that it has jurisdiction on one or more bases." (ECF No. 63 at 3) (citing *Roe v. Aware Woman Cntr. For Choice*, 253 F.3d 678, 683 (11th Cir. 2001)).

FLSA coverage is not jurisdictional in nature; rather, it is an element of the plaintiff's claim. *See Juares v. Two Good Friends, Inc.*, No. 14-cv-21013, 2014 WL 12600807, at *2 (S.D. Fla. May 6, 2014) (collecting cases). The notice pleading standard "does not afford plaintiffs with

an opportunity to raise new claims at the summary judgment stage." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004). "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint" in accordance with Federal Rule of Civil Procedure 15(a). *Id* at 1315; *see also Poer v. Jefferson Cnty. Comm'n*, 100 F.4th 1325, 1337–38 (11th Cir. 2024); *Renia v. Curtis Protective Servs., Inc*, No. 19-cv-1724, 2022 WL 1619242, at *4 (M.D. Fla. Mar. 7, 2022) (denying plaintiff's motion for summary judgment on unpled overtime claim).

Defendants correctly argue that the allegations of the Amended Complaint claim only Plaintiff's entitlement to individual coverage under an "engaged in commerce" theory. (ECF No. 28 ¶ 23) (alleging that "Plaintiff's work for Defendants," consisting of "using chemicals, cleaning agents, materials, and supplies to clean and detail vehicles," was "actually in or [] closely related to the movement of commerce" such that the FLSA applies). Accordingly, the Court considers whether Plaintiff's Motion and supporting materials support a finding that Plaintiff engaged in commerce in the ordinary course for purposes of rendering summary judgment. *See Poer*, 100 F.4th at 1337–38; *Gilmour*, 382 F.3d at 1314.

The phrase "engaged in commerce" reflects Congress's intent to regulate "only activities constituting interstate commerce, not activities merely affecting commerce." *See Thorne*, 448 F.3d at 1266 (citing *McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943)); *Navarro v. Broney Auto. Repairs, Inc.*, 533 F. Supp. 2d 1223, 1226 (S.D. Fla. 2008). The employee has the burden of proof to establish that he was engaged in interstate commerce. *Joseph v. Nichell's Caribbean Cuisine, Inc.*, 862 F. Supp. 2d 1309, 1312 (S.D. Fla. 2012) (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 121 (1946)). To establish individual coverage under the FLSA, Plaintiff must show that he directly participated in "the actual movement of persons or things in interstate commerce." *Id.*; *Thorne*,

8

448 F.3d at 1266. To do so, Plaintiff must show that his "activities are actually in or so closely related to the movement of commerce as to be a part of it." *McLeod*, 319 U.S. at 497. "Indirect or sporadic involvement in commerce is insufficient." *Perez v. New Auto Image Mktg., Inc.*, No. 15-cv-21893, 2016 WL 7540272, at *5 (S.D. Fla. May 20, 2016) (citing *Josendis*, 662 F.3d at 1315).

Plaintiff claims that he was "engaged in commerce" and is entitled to individual coverage under the FLSA "based on his work in repairing [and] reconditioning classic cars" intended to travel in interstate commerce, and based upon his collection of packages sent to Performance Auto from outside of Florida. (ECF No. 44 at 5–6). Plaintiff argues that "Mr. Cardenas's reconditioning work enabled Defendants to market and sell the renewed cars to buyers and ship the cars outside of Florida." (ECF No. 44 at 7); (ECF No. 44-1 ¶¶ 18–30). Plaintiff's Statement of Material Facts relies upon Fernando Ivan Prado's deposition testimony that Defendants could not sell a vehicle and deliver it to a buyer until after Plaintiff had completed his work upon it. (ECF No. 44-1 ¶ 27) (citation omitted).

Defendants concede that Performance Auto did not market its vehicles until after Plaintiff had completed his work. Defendants maintain that "using supplies that have previously been used in interstate commerce is insufficient to establish 'individual coverage' under the FLSA." (ECF No. 57 at 7). The Parties further dispute whether Plaintiff's regular responsibilities included "collect[ing] the packages left outside" of the dealership, "which contained [] car parts" that Mateo Prado had ordered for delivery. (ECF No. 44-2 ¶¶ 11–13).

The Parties do not dispute that Plaintiff detailed, washed, polished, and made occasional cosmetic adjustments to cars obtained by Performance Auto. (ECF No. 56-1 at 25:19–22); (ECF No. 41 at 11:1–3). On occasion, Plaintiff would perform what he terms light mechanical work, such as replacing car batteries, brake pads, and fluids. (ECF No. 44-2 ¶¶ 6–8); (ECF No. 41 at

9

11:1–3). Where more demanding work was necessary, such as detailed polishing or any substantial mechanical or repair work, Defendants would bring a given vehicle to an outside body shop. (ECF No. 39 at 11:2–7); (ECF No. 41 at 24:8–16). Additionally, Plaintiff would clean Mateo Prado's office upon arriving to work and would collect packages that had been delivered to Performance Auto.

The Parties dispute whether certain of the above duties were regular and recurrent features of Plaintiff's work. Defendants rely upon their deposition testimony that, regardless of whether the cars were procured by consignment or by purchase, Performance Auto did not designate purchasers of cars before they had been obtained and "prepared" for marketing and sale via, among other things, the completion of Plaintiff's detailing work. (ECF No. 40 at 43:9–25); (ECF No. 39 at 25:18–22). Defendants also testified that the heavy majority of Performance Auto's car sales went to in-state purchasers. (ECF No. 40 at 29:7–10). The Parties further dispute whether Plaintiff indeed performed mechanical work or made repairs to vehicles in Performance Auto's possession. Relatedly, the Parties appear to dispute whether Defendants solicited buyers for its vehicles, and therefore contemplated purchase, during the time Plaintiff was performing his undisputedly regular and recurrent job duties—i.e., detailing the cars and preparing them for purchase. *Compare* (ECF No. 44-1 ¶ 27) ("Defendants could not sell a vehicle and deliver it to its new buyer until after [Plaintiff] completed his work[.]") *with* (ECF No. 57-1 ¶ 29) ("There is zero knowledge of where any vehicle is destined when Plaintiff works on it because the buyer is not known at that time.").

The undersigned submits that none of the above disputes of fact are material; whether contested or not, Plaintiff is not entitled to summary judgment on the issue of individual coverage under the "engaged in commerce" prong.

The undersigned finds instructive the district court's analysis in *Navarro v. Broney*

*Automotive Repairs, Inc.*, where the court concluded that individual coverage was lacking where the plaintiff, an employee at an automobile repair shop, failed to produce "any evidence that he used the instrumentalities of interstate commerce in his work." 533 F. Supp. 2d at 1226 ("On the contrary, the evidence of record shows that [the plaintiff's] duties are all intra state . . . . [T]he fact that a number of the auto parts 'have crossed state lines at a previous time does not in itself implicate interstate commerce.'") (quoting *Thorne*, 448 F.3d at 1267).

That Plaintiff used items shipped to Florida from out of state in his regular responsibilities does not render Plaintiff's use of those items, on his employer's behalf, interstate in nature. *Id.* The Court in *Navarro* reasoned:

> [w]hen the auto parts are shipped to Florida, the out-of-state shippers do not intend
> to reach any individual car owner. Rather, the out-of-state shippers send the parts
> to the local dealer, where they are kept until they are purchased in the local market.
> Therefore, the interstate journey stops when the parts reached the local dealer.

*Id.* (citation omitted). *Navarro* relies upon the Eleventh Circuit's decision in *Thorne*, where the Court held that "when goods reach the customer for whom they were intended, the interstate journey ends and employees engaged in any further intra state movement of the goods are not covered under the [FLSA]." *Thorne*, 448 F.3d at 1267.

Plaintiff's Motion, and the evidence advanced therewith, sets forth an analogous set of facts: Performance Auto ordered materials to be used in preparing cars to be marketed; some of those materials were received from out of state; the out-of-state shippers sent the parts to Performance Auto; and Plaintiff used the materials in his regular work. Plaintiff performed detailing work on the cars procured by Performance Auto. He did not engage in those cars' procurement, their resale, or their transportation to and from Performance Auto. *See* (ECF No. 56-1 at 4–20); (ECF No. 41 at 6:6–10); (ECF No. 40 at 17:9–18:25). Indeed, Plaintiff did not even place orders for the shipment of the materials he used in his work; Mateo Prado did. (ECF No. 56-

1 at 33:5–9).

Plaintiff maintains that among his regular responsibilities at Performance Auto was the collection of packages shipped to Performance Auto, and that this suffices to establish individual coverage. (ECF No. 44-1 ¶ 25); (ECF No. 44 at 6). Plaintiff characterizes his job as performing the "last leg" of the delivery of packages that arrived from out of state, and subsequently incorporating the parts contained therein into vehicles that had or would thereafter travel in interstate commerce. (ECF No. 44 at 6). Defendants admit that Plaintiff collected packages delivered to Performance Auto but argue that "merely receiving packages from out of State is insufficient to establish individual coverage." (ECF No. 57 at 7) (citation omitted); *see* (ECF No. 57-1 ¶ 25). Defendants are right. As discussed above, Plaintiff has not demonstrated that his receipt of the packages and use of those contents in his detailing work constituted engagement in commerce under the FLSA.

Plaintiff relies upon two cases for the proposition that his collection of packages delivered to Performance Auto constituted the "handling" of goods or materials that moved in interstate commerce. *See White v. Move4all, Inc.*, No. 18-cv-2120, 2021 WL 8201491, at *14 (M.D. Fla. June 23, 2021); *Mendoza v. Disc. C.V. Joint Rack & Pinion Rebuilding, Inc.*, 101 F. Supp. 3d 1282, 1288 (S.D. Fla. 2015) (*Discount C.V.*).

Plaintiff's cited cases are distinguishable from the present facts. In *White*, the district court ruled on the plaintiff's motion for default judgment, in which posture the court assumed the allegations in the plaintiff's complaint as true. *See White*, 2021 WL 8201491, at *2. The plaintiff employee worked for a company that provided moving and delivery services to commercial and residential customers. *Id.* at *3. The court assumed as true, for purposes of ruling on the motion, that his duties as an employee involved "loading goods or materials for interstate transportation,

unloading goods or materials at the conclusion of their interstate transportation, and handling records of interstate transactions." *Id.* at \*5. The court found these allegations sufficient to establish individual coverage. The court emphasized, in reaching this conclusion, that the plaintiff had alleged that he kept records relative to interstate transactions. *Id.* Here, Plaintiff never left the state of Florida pursuant to his employment at Performance Auto; the furthest he traveled from Miami for work was to Jacksonville. (ECF No. 57-1 at 32:11–22). Plaintiff nowhere asserts he maintained records relative to interstate transactions. And, while the plaintiff in *White* loaded and unloaded materials to assist in the provision of moving and delivery services, Plaintiff here claims only to have collected packages delivered to Performance Auto. (ECF No. 44-1 ¶ 25).

So too is *Discount C.V.* premised on a distinguishable set of facts. There, the district court noted that Plaintiff's responsibilities included (1) making calls out of state to order auto parts necessary for his employer's work, (2) speaking by telephone with out-of-state customers on a weekly basis, (3) processing the interstate purchase of automobile parts, (4) assembling constant velocity axles using components shipped to the defendant from out of state and installing them on cars that "often had out-of-state license plates" or were "shipped elsewhere," (5) assisting in off-loading trucks that had arrived from out of state, and (6) "regularly and daily" handling components "shipped to and from" out-of-state businesses. *See* 101 F. Supp. 3d at 1287. Based upon this record evidence, and absent any opposition brief from the defense, the court found "ample grounds for individual FLSA coverage." *Id.* at 1288. Plaintiff has simply not demonstrated, for purposes of summary judgment, that his work at Performance Auto encompassed such direct, regular and recurrent out-of-state contact as did the plaintiff's work in *Discount C.V.*

Plaintiff argues that he regularly engaged in commerce because some of the vehicles he worked on were sold in interstate commerce. On this front, Plaintiff's case resembles *Perez v. New*

13

*Auto Image Marketing, Inc.*, where the district court rejected the argument of a plaintiff automobile repairman that his repair work was "an essential part of the channel of commerce" in that its completion was necessary to enable post-repair interstate transport. *See* 2016 WL 7540272, at *6. The court reasoned that such work bore only an indirect relationship to interstate commerce: "[t]his argument confuses tangential involvement with interstate commerce with direct involvement, and it has been rejected by other district courts under similar circumstances." *Id.*; *see also Mendoza v. Detail Sols., LLC*, 911 F. Supp. 433, 440 (N.D. Tex. 2012) ("[I]t is not enough for an employee's work to be 'integral' to interstate commerce . . . . Here, the mere washing of cars that have once moved in commerce is not closely related to the movement of those cars in commerce[.]"). Accordingly, Plaintiff's regular work, even if integral to Performance Auto's business, bore only a tangential nexus to Performance Auto's ultimate sale of vehicles in interstate commerce.

The fact that some of Performance Auto's car sales went to out-of-state purchasers does not render Plaintiff's detailing work an "engage[ment] in commerce" for purposes of the FLSA. Indeed, *Navarro* featured the same factual circumstances as those underlying the present case. *See Navarro v. Broney Auto. Repairs, Inc.*, 314 F. App'x 179, 180 (11th Cir. 2008), *cert. denied*, 555 U.S. 996 (2008); *see also Pino v. Painted to Perfection Corp.*, 563 F. App'x 764, 767 (11th Cir. 2014). The crux of the Court's analysis in *Navarro*, as here, was the work of the employee rather than the employer or enterprise for which the employee worked. Based upon the undisputed evidence of Plaintiff's regular job responsibilities at Performance Auto, Plaintiff has not shown that his fulfillment of his duties bore a sufficiently direct relationship to the movement of the vehicles he detailed in interstate commerce. *See Perez*, 2016 WL 7540272, at *6.

Plaintiff has failed to demonstrate entitlement to summary judgment on the issue of individual coverage. *See Navarro*, 533 F. Supp. 2d at 1226; *Perez*, 2016 WL 7540272, at *6; *see*

*also Ledbetter v. S.T.A.R. Sec. Corp.*, No. 19-14018-CIV, 2021 WL 1246013, at *5–6 (S.D. Fla. Mar. 26, 2021) (collecting and discussing cases). Based upon the foregoing analysis, the undersigned recommends that summary judgment be **DENIED** on the issue of whether Plaintiff is entitled to individual coverage under the FLSA.

### ii.   Whether Defendant is Subject to Enterprise Coverage

Where individual coverage has not been established, an enterprise may nevertheless be subject to the FLSA's overtime wage provisions. Enterprise coverage exists where an enterprise "(1) has at least two employees engaged in interstate commerce or the production of goods for interstate commerce, or who handle, sell, or otherwise work on goods or materials that had once moved or been produced for in interstate commerce, and (2) has gross sales of at least $500,000 in sales annually." *Josendis*, 662 F.3d at 1317. It is Plaintiff's burden to establish enterprise coverage. *See Mejia v. Fornos Corp.*, No. 19-cv-20683, 2019 WL 13241558, at *2 (S.D. Fla. Sept. 6, 2019) (citing *Solano v. A Navas Party Prod., Inc.*, No. 09-22847-CIV, 2011 WL 98819, at *6 (S.D. Fla. Jan. 12, 2011)).

The "two or more employees" requirement referenced above derives from the text of 29 U.S.C. § 203(s)(1): all other conditions being met, enterprise coverage under the FLSA applies only to enterprises employing "employees," plural. 29 U.S.C. § 203(s)(1); *Diaz v. Jaguar Rest. Grp., LLC*, 649 F. Supp. 2d 1343, 1347 (S.D. Fla. 2009); *see also* 29 C.F.R. § 779.238. Determining an individual's employment status within the meaning of the FLSA is a question of law; "however, the historical facts that form the basis to make that determination are questions of fact." *Solano v. A Navas Party Prod., Inc.*, 728 F. Supp. 2d 1334, 1340 (S.D. Fla. 2010) (citing *Patel v. Wargo*, 803 F.2d 632, 634 (11th Cir. 1986)).

Plaintiff claims, and Defendants admit, that Performance Auto grossed more than

$500,000.00 in annual revenues. However, the Parties dispute whether Performance Auto employed "two or more employees" during the relevant period. Plaintiff claims that Mateo Prado was an "employee" of Performance Auto because he "received a W-2 from it" and due to "his job duties such as replacing interior and exterior parts . . . and detailing cars." (ECF No. 44 at 8). Plaintiff's Statement of Facts relays Mateo Prado's deposition testimony that he "received a W-2 from Performance Auto," and "was, and remains, an employee of Performance Auto." (ECF No. 44-1 ¶¶ 12–14).

Defendants counter that the record evidence is clear that Plaintiff was the sole employee other than Fernando Ivan Prado or Mateo Prado during the relevant period. (ECF No. 57-1 at ¶ 16) (citations omitted).[1] Defendants rely on Mateo Prado's deposition testimony to show that Plaintiff was Performance Auto's lone employee, and that Fernando Ivan Prado and Mateo Prado were Plaintiff's employers. (ECF No. 57-1 ¶ 16). Plaintiff acknowledges the existence of the Parties' factual dispute but argues that Defendants' position is illegitimate. (ECF No. 44 at 8).

Upon review of the Parties' positions, and as explained below, the undersigned concludes that a legitimate issue of material fact exists as to whether Mateo Prado was an employee or an employer at Performance Auto. While Mateo Prado indeed described himself and his father as "employees" of Performance Auto, the limited record evidence and circumstances of this case paint an ambiguous and sparse picture of Mateo Prado's role. The evidence advanced by the Parties is ill-suited for application of the applicable "economic reality" test or for disposition on a motion

---

[1] Plaintiff, in Reply, frames Defendants' argument as traveling under the distinct "family business" exemption to FLSA coverage, under 29 U.S.C. § 203(s)(2). (ECF No. 63 at 2). Defendants do indeed conflate the two FLSA provisions in the Response brief. (ECF No. 57 at 10–11) (citing *Chappell v. Boss Rain Forest Pet Resort, Inc.*, No. 16-62779-CIV, 2018 WL 7365237, at *11 (S.D. Fla. Mar. 15, 2018)). Yet, Plaintiff's Motion explicitly claims that "Performance Auto employed two employees . . . thereby satisfying the 'two or more employees' prong of the interstate commerce requirement.'" (ECF No. 44 at 8). The Parties thus agree that the "two or more employees" prong must be met. Satisfaction of the "two or more employees" requirement remains essential for purposes of establishing enterprise coverage and remains in dispute.

for summary judgment. *Romero v. Razzle Dazzle Barbershop, Inc.*, 793 F. App'x 853, 857 n.2 (11th Cir. 2019) (citing cases).

The FLSA defines an "employee" as "any individual employed by an employer," and an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Schumann v. Collier Anesthesia, P.A.*, 803 F.3d 1199, 1207 (11th Cir. 2015) (quoting 29 U.S.C. §§ 203(d) and (e)(1)). The term "employ" means "to suffer or permit to work." *Id.* (citation omitted). The "suffer or permit to work" standard is broadly construed to effectuate the FLSA's broad remedial provisions. *See Garcia-Celestino v. Ruiz Harvesting, Inc.*, 843 F.3d 1276, 1287 (11th Cir. 2016). To determine an individual's employment status under the FLSA, a court must apply the "economic reality" test. "[A]n entity is deemed to employ a worker," and a worker thus attains employee status, "where, as a matter of 'economic reality' and under all the circumstances, the worker is 'economically dependent' on the hiring entity." *Id.* Courts similarly apply the "economic reality" test to determine employer status, considering factors such as whether the putative employer (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. *Id.* The overarching inquiry is whether the alleged employer is "involved in the day-to-day operation or [has] some direct responsibility for the supervision of the employee." *Patel*, 803 F.2d at 638.

Mateo Prado's role and relationship with Plaintiff are unclear based on the materials advanced on summary judgment. Plaintiff's Statement of Facts does little to recount Mateo Prado's day-to-day responsibilities at Performance Auto but proffers that "[t]he Defendants, Performance Auto, Fernando Ivan Prado, and Mateo Prado, employed [Plaintiff], as the term 'employer' is defined by 29 U.S.C. § 203(d)." (ECF No. 44-1 ¶ 17) (citing (ECF Nos. 28 ¶ 13, 29 ¶ 13)). Indeed,

17

the Amended Complaint describes Mateo Prado as an "owner/officer/director/manager of the corporate Defendant for the time period relevant to this lawsuit," alleging he "ran [Performance Auto's] day-to-day operations, was responsible for all operational decisions, and was partially or totally responsible for paying Plaintiff's wages." (ECF No. 28 ¶ 7). The undersigned notes that Plaintiff's position on the question of enterprise jurisdiction is squarely at odds with his claim, conceded by Defendants above, that Mateo Prado was his employer under the FLSA.[2]

The Parties' deposition testimony sheds little light on Mateo Prado's job responsibilities or working relationship with Plaintiff. *See Patel*, 803 F.2d at 637–38. Mateo Prado testified that his day-to-day responsibilities included answering emails, tending to clients, advertising cars and removing cars from advertising, ensuring that the cars were ready to be advertised, and taking cars to mechanics. (ECF No. 41 at 6:4–10). This much of his testimony appears undisputed. On the other hand, Mateo Prado also testified that he dictated what work Plaintiff should prioritize for Performance Auto during busy periods, (ECF No. 40 at 14:20–24), and prepared the checks by which Plaintiff received his compensation. ((ECF No. 41 at 39:9–12). Plaintiff himself testified that it was Mateo Prado who first directed him to work on Saturdays—first at Performance Auto and later at Fernando Ivan Prado's residence. (ECF No. 56-1 at 43:18–25). Plaintiff cleaned Mateo Prado's office upon arriving to work every morning. (*Id.* at 31:4–7). This testimony corroborates the allegations of Plaintiff's Amended Complaint and gives rise to a genuine issue of material fact.

---

[2] Plaintiff has provided the Court with no authority finding that an individual can qualify as both an employer and an employee under the FLSA or the circumstances presented here. The balance of courts has found that employees may attain employer status, at which point their status as employees under the FLSA is extinguished. *See, e.g.*, *Howard v. Second Chance Jai Ali LLC*, No. 15-cv-200, 2016 WL 7180243, at *20 (M.D. Fla. Dec. 9, 2016) (citing *Gionfriddo v. Jason Link, LLC*, 769 F. Supp. 2d 880, 893–94 (D. Md. 2011); *Ayres v. 127 Rest. Corp.*, 12 F. Supp. 2d 305, 308–09 (S.D.N.Y. 1998)); *Whited v. New Café at Greystone Gardens*, No. 13-1811, 2020 WL 1271681, at *4 (M.D. Pa. Mar. 17, 2020) (citing *Chung v. New Silver Palace Rest., Inc.*, 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002)) (additional citation omitted); *see also Whited*, 2020 WL 1271681, at *5 (concluding that "an employer or manager may not receive a portion of tips received by employees"). In other words, Mateo Prado can either have been an employer or an employee for purposes of Plaintiff's suit, but cannot have been both.

Plaintiff also relies on the fact that Mateo Prado received W-2 forms. Plaintiff has not advanced authority supporting the proposition that an individual's status as an employer or employee may be determined by their receipt of a W-2 form. As a general matter, the economic reality test rejects the elevation of form over substance in determining individuals' status as employers, employees, and independent contractors. *See Schumann*, No. 12-cv-347, 2016 WL 6276846, at *16. Thus, in *Kalloo v. Unlimited Mechanical Co. of NY, Inc.*, the district court inquired into the totality of the circumstances to find that a plaintiff was an employee, rather than an independent contractor, for purposes of their FLSA claim. *See* 977 F. Supp. 2d 187, 202 (E.D.N.Y. 2013). In doing so, the Court gave little weight to the fact that the plaintiff had received 1099 forms ordinarily issued to independent contractors. *See id.* (concluding that the fact "[t]hat [the plaintiff] received a 1099 form does not outweigh the other, more substantial aspects of his relationship with defendants" and that "the totality of the circumstances demonstrates that [the] defendants employed [the plaintiff] under the FLSA[.]").

An analysis of the "more substantial aspects" of Mateo Prado's role at Performance Auto cannot be undertaken without resolving genuine disagreements on an ambiguous and sparse evidentiary proffer. Such questions are properly resolved by the finder of fact at trial. Accordingly, summary judgment as to whether Defendants are subject to enterprise coverage under the FLSA is due to be **DENIED**.

## C.    Whether Plaintiff is Entitled to Overtime Compensation

Plaintiff claims that he worked overtime without compensation under the FLSA. In sole reliance upon his own Declaration, Plaintiff avers that he worked, on average, "approximately 44 hours each week he worked for the Defendants." (ECF No. 44-1 ¶ 50) (citing (ECF No. 44-2 ¶ 28)). Plaintiff's hours estimate is premised on two contentions: that he took an abbreviated lunch

break each weekday and that, during the relevant period in this litigation, he worked approximately four hours every other Saturday. Defendants argue that a genuine issue of material fact exists as to whether Plaintiff worked overtime, citing the deposition of Mateo Prado, wherein Mateo Prado "testified a number of times that Plaintiff worked between 35 to 38 hours per week, even if Saturdays are considered." (ECF No. 57 at 11) (citing (ECF Nos. 40 at 32:17–33:12, 41 at 17:21–18:7)). Defendants further complain that the evidence advanced in support of Plaintiff's position consists merely "of [Plaintiff's] own testimony and estimate" of how many hours Plaintiff worked per week, on average.

As discussed in greater detail below, Plaintiff's entitlement to overtime compensation is replete with genuine disputes of material fact. The Parties dispute the number of hours Plaintiff worked on an average weekly basis, the amount of time Plaintiff took on his daily lunch break, the frequency of Plaintiff's weekend work over a period of years, and the nature of Plaintiff's weekend work, i.e., whether it was labor within the scope of Plaintiff's employment.

The FLSA places upon an employee plaintiff "the burden of proving that he performed work for which he was not properly compensated." *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1315 (11th Cir. 2013) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946)). This burden is relaxed, however, where the employer failed to keep time records. In such cases:

> an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Anderson*, 328 U.S. at 687–88.[3]

Where *Anderson* applies, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Bautista Hernandez v. Tadala's Nursery, Inc.*, 34 F. Supp. 3d 1229, 1243 (quoting *Hodgson v. Ricky Fashions, Inc.*, 434 F.2d 1261, 1263–64 (5th Cir. 1970)); *Brock v. Norman's Country Mkt., Inc.*, 835 F.2d 823, 828 (11th Cir. 1988) ("[W]here an employer has not kept adequate records of their employee's wages and hours as required by the FLSA, the employees will not be denied a recovery of back wages on the ground that their uncompensated work cannot be precisely determined.").

---

[3] The *Anderson* standard operates as a shield against summary judgment disposition: an FLSA defendant may not benefit from their failure to adequately maintain and preserve records of the number of hours an FLSA plaintiff worked. *Anderson*, 328 U.S. at 687 (reasoning that the solution in such cases "is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work"); *Allen v. Bd. Of Public Educ. For Bibb Cnty.*, 495 F.3d 1306, 1317 (11th Cir. 2007) ("We believe *Anderson* demonstrates that Plaintiffs may ultimately be permitted to show the amount and extent of their unpaid overtime as a matter of just and reasonable inference[.]"); *see also Brock*, 835 F.2d at 828. Because the standard applies where a defendant lacks records of the hours a plaintiff employee worked, the plaintiff is permitted to rely upon "deposition testimony, affidavit, or declaration" to show the fact, amount, and extent of his overtime work, demonstrate the existence of a genuine issue of material fact, and defeat summary judgment. *See Gelber v. Akal Sec., Inc.*, No. 16-cv-23170, 2017 WL 6949274, at *3 (S.D. Fla. Aug. 8, 2017) (quoting *Jarmon v. Vinson Guard Servs.*, Inc., No. 08-CV-2106, 2010 WL 11507029, at *8 (N.D. Ala. Jul. 13, 2010)). At that point, the employer must produce evidence of the "precise amount of work performed" or that negates the reasonableness of the plaintiff's proffer.

Whether *Anderson*'s adjustment of the Parties' evidentiary burdens applies with equal force as a *sword*, where the plaintiff is the movant—and thus heightens the non-movant defendant's burden to demonstrate a genuine dispute of material fact—is less clear. On the one hand, the FLSA is a broad remedial statute to be construed in favor of undercompensated plaintiffs. *See Rafferty v. Denny's, Inc.*, 13 F.4th 1166, 1190 (11th Cir. 2021). *But see Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 474–75 (2016) (Thomas, J., dissenting) (noting *Anderson*'s "shaky foundations" and that the Supreme Court has sparingly, if at all, relied on *Anderson* to decide FLSA cases); *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 89 (2018) (rejecting the principle that "the FLSA pursues its remedial purpose at all costs") (cleaned up) (quotations omitted). Courts do apply the *Anderson* standard to plaintiffs' summary judgment motions. *See, e.g.*, *Ramos v. Hoyle*, No. 08-21809-CIV, 2009 WL 2151305, at *4–5 (S.D. Fla. Jul. 16, 2009); *Panico v. YGSL Holdings LLC*, No. 12-61269-CIV, 2013 WL 28376, at *4 (S.D. Fla. Jan. 2, 2013).

On the undersigned's reading, *Anderson* and its progeny serve to enable the finder of fact to determine issues as to the number of hours an employee worked. *See, e.g.*, *Torres v. Rock & River Food Inc.*, 244 F. Supp. 3d 1320, 1333 (S.D. Fla. 2016) ("[W]hether sixty hours a week is a reasonable inference to draw from the evidence is not a determination for the Court, rather 'it is the duty of the trier of facts to draw whatever reasonable inferences can be drawn from the employees' evidence . . . .'") (quoting *Anderson*, 328 U.S. at 693).

Plaintiff "may fulfill his duty to present the necessary evidence under the [*Anderson*] formulation through his own testimony recollecting the number of hours of overtime he worked, 'although the court need not accept every element of the plaintiff's case simply because the employer fails to produce records.'" *Bozeman v. Port-O-Tech Corp.*, No. 07-60569, 2008 WL 4371313, at *14 (S.D. Fla. Sept. 19, 2008) (quoting *Leonard v. Carmichael Props. & Mgmt. Co., Inc.*, 614 F. Supp. 1182, 1186 (S.D. Fla. 1985)). While *Anderson* "anticipate[s] that an employee can estimate to a certain extent, it does not allow pure speculation." *Byrne v. Goodwill S. Fla. TEP, LLC*, No. 24-61276-CIV, 2025 WL 1872021, at *13 (S.D. Fla. May 29, 2025) (denying summary judgment where the plaintiff's "speculative and unsupported (and, frankly, not credible) estimates" had "no rational basis in the record"); *see also Ihegword v. Harris Cnty. Hosp. Dist.*, 555 F. App'x 372, 375 (5th Cir. 2014) ("[A]n unsubstantiated and speculative estimate of uncompensated overtime does not constitute evidence sufficient to show the amount and extent of that work as a matter of just and reasonable inference").

Here, Defendants concede that they failed to maintain records indicating the hours Plaintiff worked. *See* (ECF No. 39 at 13–14). Accordingly, the relaxed evidentiary standard under *Anderson* would apply. *See Daniley v. Fla.'s Green Thumb Lawn & Pest, LLC*, No. 24-cv-02023, 2025 WL 360855, at *3–4 (M.D. Fla. Jan. 16, 2025), *report and recommendation adopted*, 2025 WL 359250 (M.D. Fla. Jan. 31, 2025); 29 U.S.C. § 211(c).[4] The question is whether Plaintiff's submissions suffice to demonstrate the absence of any disputed material fact, entitling him to summary judgment on this issue.

---

[4] The Court's analysis of whether summary judgment is warranted on the issue of Plaintiff's entitlement to overtime compensation follows the analysis above, where the undersigned concluded that Plaintiff is not entitled to summary judgment on the antecedent issue of FLSA coverage. *Anderson*'s holding is implicated if the FLSA applies; whether the FLSA applies remains here in doubt. *See, e.g., Garay v. B&G Volker Corp.*, No. 99-1873-CIV, 2000 WL 1717632, at *5 (S.D. Fla. Aug. 4, 2000) (applying *Anderson* to address whether defendant violated the FLSA's minimum wage and overtime wage provisions, "[a]ssuming, *arguendo* that [the plaintiff] was covered by the FLSA").

The first dispute of material fact underlying Plaintiff's hours estimate concerns the amount of time Plaintiff spent on his lunch break each day of the workweek. Defendants testified that Plaintiff took an hour of lunch, as allotted, each weekday, supporting their conclusion that, assuming Plaintiff worked three hours every other Saturday,[5] Plaintiff would have worked only 35 hours twice a month and 38 twice a month. *See* (ECF No. 40 at 33:3–12, 39:09–12). Plaintiff acknowledges that one hour was offered as a matter of policy but testified that he took lunch breaks of "15, 20 minutes, [or] half an hour," depending on how busy Performance Auto was on a given day, adding that it "would have been a sin for [Defendants] to give you one hour." (ECF No. 56-1 at 42:18–25).

The FLSA requires employers to pay overtime wages to employees for all "hours worked" in excess of 40 per week. *Gelber v. Akal Sec., Inc.*, 14 F.4th 1279, 1281 (11th Cir. 2021). The Department of Labor has promulgated implementing regulations clarifying the meaning of the term "hours worked" in specific situations, including, as relevant here, meal breaks. *Id.*; 29 C.F.R. § 785.19; *see also Kohlheim v. Glynn Cnty.*, 915 F.2d 1473, 1477 n.20 (11th Cir. 1990) (adopting the "mealtime exclusion standards of § 785.19 as an appropriate statement of the law"). Section 785.19 excludes "bona fide meal periods" from compensable "hours worked" so long as he is "completely freed from duties during the meal period." An employee "bears the initial burden to show that the meal period constituted work." *Gelber*, 14 F.4th at 1283.

Whether Plaintiff took an abbreviated lunch or the full hour of lunch time allotted to him constitutes a genuine issue of material fact, as does whether Plaintiff's meal periods should be considered "bona fide meal periods" under section 785.19. Plaintiff's Declaration states that his

---

[5] The undersigned notes that the Parties disagree as to the duration of Plaintiff's weekend work; Defendants maintain that Plaintiff worked on Saturdays from 10:00 A.M. to 1:00 P.M., *see* (ECF No. 40 at 33:8–12), whereas Plaintiff asserts in his Declaration that he "worked every other Saturday from 10:00 a.m. to 2:00 p.m., either at the [Performance Auto] location or at Fernando Ivan Prado's home," *see* (ECF No. 44-2 ¶ 22).

23

weekday breaks were "rare" and "would not last more than 10 to 15 minutes at a time." (ECF No. 44-2 ¶ 20). The statements in Plaintiff's Declaration are inconsistent with the testimony Plaintiff gave at his deposition, that he would take "15, 20 minutes, [or] half an hour" for lunch, depending on how busy he was on a given day. (ECF No. 56-1 at 42:18–25). In any event, Defendants advance testimony contradicting Plaintiff's assertion that he took abbreviated lunch breaks; Mateo Prado gave cross-examined testimony that Plaintiff was told to, and did, take his hour-long lunch break. (ECF No. 40 at 33:1–34:5); *see also* (*id.* at 39:19–23); (ECF No. 41 at 17:25–18:2). This dispute of fact is material. As Defendants argue, if they are right that Plaintiff took his hour, then Plaintiff would have worked a baseline of 35 hours per week and would not be entitled to overtime for an additional three or four hours of work every other Saturday. *See* (ECF No. 40 at 39:20–23); (ECF No. 57-1 ¶ 50) (citations omitted). If Plaintiff is right, and a significant portion of his allotted lunch time was in fact spent performing compensable work, then his average amount of hours worked may exceed 40.

Plaintiff's estimation of the frequency with which he worked on Saturdays is inconsistent with the record evidence; it does not account for the Parties' respective deposition testimony noting that the frequency of Plaintiff's weekend work varied over the course of years. *Compare* (ECF No. 44-1 ¶ 50) (Plaintiff's Statement of Facts, claiming, "Mr. Cardenas estimates that he worked approximately 44 hours *each week* he worked for the Defendants") (emphasis added) *with* (ECF No. 56-1 at 39–43) (Plaintiff, testifying that he worked every Saturday except in the six months before his termination),[6] (ECF No. 40 at 39:24–40:2) (Mateo Prado, testifying that "the last couple

---

[6] *But see* (ECF No. 44-2 ¶ 22) (Plaintiff, declaring that he "worked every other Saturday from 10:00 a.m. to 2:00 p.m., either at the Performance Auto Wholesalers, LLC location or at Fernando Ivan Prado's home"). Here, too, lies a dispute of fact. Defendants maintain that Plaintiff's weekend work ran from 10:00 A.M. to 1:00 P.M.—three, not four hours. *See* (ECF No. 40 at 39:09–12). Because Plaintiff's estimate of his weekday hours is itself genuinely contested, the undersigned cannot now determine whether this hour-long discrepancy is material.

years or year at least, [Plaintiff] was only working one Saturday"), *and* (ECF No. 39 at 16:2–5) (Fernando Ivan Prado, testifying that Plaintiff "would work on alternate Saturdays. One on, one off"). Whereas Plaintiff avers generally that he worked every other Saturday, (ECF Nos. 44-1 ¶ 50, 44-2 ¶ 22), the Parties' deposition testimony and other materials indicate that this was the case only for an indeterminate number of months. *See, e.g.*, (ECF No. 40 at 39:24–40:2); (ECF No. 56-1 at 39:5–9). As Defendants argue, Plaintiff's deposition testimony is inconsistent not only with his Statement of Facts and Declaration but also with Defendants' deposition testimony. *See* (ECF No. 57 at 12). Accordingly, the frequency with which Plaintiff worked Saturdays represents a genuine dispute of material fact.

Numerous other issues of fact remain live. Review of the record evidence reveals conflict between whether Plaintiff's weekend work at Fernando Ivan Prado's home was work pursuant to Plaintiff's employment or consisted of household chores. *See* (ECF No. 56-1 at 43:23–44:1); (ECF No. 40 at 40:22–41:10). Defendants testify that Plaintiff's weekend work consisted, at least in part, of housekeeping tasks rather than work detailing Performance Auto's cars. (ECF No. 40 at 40:22–41:2); (ECF No. 56-1 at 43:18–44:1) ("[S]ometimes on the Saturdays, they would tell me, 'don't come to the dealer. Just go to my home and clean there.' I would clean the pool, the roof. I also cleaned the house."). The Parties dispute the extent to which Plaintiff adhered to a 10:00 A.M.–6:00 P.M. weekday schedule, whether he exceeded or fell short of meeting that schedule. *Compare* (ECF No. 41 at 19:12–16) *with* (ECF No. 44-1 ¶ 49) (stating, in reliance on Plaintiff's Declaration, that "Mr. Cardenas was usually the first to arrive at work each day and the last to leave").

Based upon the evidence advanced in support of Plaintiff's Motion, Plaintiff has failed to show his entitlement to summary judgment on the question of whether he worked in excess of 40 hours per week. Despite Plaintiff's Declaration attesting that he worked approximately 44 hours

per week, the record evidence, including his cross-examined deposition testimony, reveals contested facts that undermine Plaintiff's conclusory estimate.[7] While a plaintiff's uncorroborated estimate of his overtime hours may be sufficient evidence to create a genuine disputed fact when submitted in opposition to summary judgment, Plaintiff, as movant, is not entitled to have his evidence viewed in the light most favorable to him. *See, e.g., Brandt v. Gasolinera, Inc.*, No. 18-80472-CIV, 2019 WL 3890633, at *7 (S.D. Fla. Jun. 18, 2019) ("I must at this stage consider the record in the light most favorable to Plaintiff . . . . I cannot overstate how slim the margin by which his affidavit suffices, though . . ."); *Walters v. Am. Coach Lines of Mia., Inc.*, 569 F. Supp. 2d 1270, 1300–01 (S.D. Fla. 2008) (finding that "[g]enuine issues of material fact remain" as to whether Plaintiff who opposed summary judgment in sole reliance on an affidavit was compensated at an effective hourly rate below the federal minimum wage). Here, Defendants are situated as the non-movant, the evidence upon which Plaintiff relies is ambiguous at almost every step, and it is contradicted by Defendants' deposition testimony. While a Plaintiff's burden to establish the number of hours he worked is relaxed in these circumstances, it remains a burden that must be met through Plaintiff's evidentiary proffer. *See Jackson v. Corr. Corp. of Am.*, 606 F. App'x 945, 952 & n.10 (11th Cir. 2015). The undersigned concludes that, on this record, Plaintiff has failed to meet that burden.

The Eleventh Circuit in *Klinedinst v. Swift Investments, Inc.* held, under circumstances similar to those here, that a genuine dispute existed as to the number of hours the plaintiff worked. *See* 260 F.3d 1251, 1256–57 (11th Cir. 2001). There, as here, a plaintiff claimed entitlement to overtime payments pursuant to *Anderson*, and "neither party kept records of the number of hours"

---

[7] Plaintiff's estimate of *weekly* hours worked appears to double-count his weekend hours, assuming eight hours of compensatory work performed each weekday and four hours of compensatory work *each* weekend, for a total of 44 hours worked per week. This is inconsistent with Plaintiff's own testimony that he worked "every *other* Saturday," *see* (ECF No. 44-1 ¶¶ 40, 42) (emphasis added).

the plaintiff worked. *Id.* Noting that "both parties offer contradictory statements as to the number of hours [the plaintiff] actually worked," the Eleventh Circuit concluded that the district court had erred in making a factual determination as to the number of hours the plaintiff worked based on what evidence was available to it on summary judgment. *Id.*; *see also Raum*, 2024 WL 6982285, at *5.

Plaintiff argues that Mateo Prado's testimony regarding the length of Plaintiff's meal breaks is speculative because it is not based on personal knowledge. Consequently, his testimony cannot be reduced to admissible evidence at trial and therefore cannot give rise to a genuine issue of material fact sufficient to avoid the entry of summary judgment for Plaintiff. *See* (ECF No. 63 at 4–7); *Ellis v. England*, 432 F.3d 1321, 1325–26 (11th Cir. 2005) ("[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."). Plaintiff contends that Mateo Prado mistakenly assumed that "because [Plaintiff] was scheduled to work certain hours and could take one hour for lunch each day, he worked only those hours and actually took one hour for lunch each day." (*Id.* at 5) (arguing that "Mateo Prado testified that his testimony was not based on personal knowledge but on 'assuming he's taking his hour' because the Defendants '[d]idn't really keep track' of how long [Plaintiff] took for a lunch break").

Plaintiff's argument hinges on his complaint that Mateo Prado lacked personal knowledge as to the precise duration of Plaintiff's lunch and other breaks. Deposition testimony used to support or oppose summary judgment motions must "be made on personal knowledge, [and] shall set forth such facts as would be admissible in evidence." *Macuba v. Deboer*, 193 F.3d 1316, 1322–23 (11th Cir. 1999) (citing *Randle v. LaSalle Telecomms.*, 876 F.2d 563, 570 n.4 (7th Cir. 1989); *see also* Fed. R. Civ. P. 56(e). Personal knowledge is "not an absolute" and "may consist of what the witness thinks he knows from personal perception." Fed. R. Evid. 602 advisory committee's note to 1972

27

proposed rule (citing 2 Wigmore § 650)[8]; *see also Christian Tennant Custom Homes of Fla., Inc. v. EBSCO Gulf Coast Dev.*, No. 15-cv-585, 2017 WL 4102458, at *5 & n.11 (N.D. Fla. Sept. 15, 2017) (collecting cases for the proposition that "[f]ederal district courts in Florida consider the Advisory Committee Notes accompanying the Federal Rules of Evidence when interpreting and applying the rules"). Evidence used to prove personal knowledge may consist of the witness's own testimony. Fed. R. Evid. 602.

Review of Mateo Prado's deposition transcript reveals that Prado's testimony was adequately based on personal knowledge; Prado explained that he perceived Plaintiff on breaks throughout the day. When Prado "saw [Plaintiff] eating" and "saw [Plaintiff] on the phone talking," he inferred that Plaintiff was taking a break. *See* (ECF No. 40 at 33:22–34:3). "[P]ersonal knowledge can be established by showing that the witness was in a physical position to see, hear, or otherwise perceive the matters to which the testimony relates." *Johnson v. Scotty's, Inc.*, 119 F. Supp. 2d 1276, 1281 (M.D. Fla. Sept. 7, 2000). Mateo Prado's testimony as to Plaintiff's use of break time consisted of what he inferred based upon what he saw. Mateo Prado's testimony further indicates that he was in a position to *hear* Plaintiff "on the phone all the time while he was at work," and that he inferred that at least some of Plaintiff's phone calls were made while on break. (ECF No. 40 at 33:22–23).

Plaintiff's challenge strikes at the weight, not the admissibility, of Mateo Prado's testimony—a matter the finder of fact will have to evaluate. For purposes of this Motion, however, Plaintiff's objection to the Court's consideration of Mateo's testimony should be overruled.

Review of the Parties' argument, the record evidence, and the applicable precedent

---

[8] Plaintiff advances a definition of personal knowledge coextensive with that set forth by the advisory committee notes to Rule 602 for purposes of this analysis. *See* (ECF No. 63 at 6) (quoting *Batres-Garay v. United States AG*, 748 F. App'x 204, 209 (11th Cir. 2018) (defining personal knowledge as "[k]nowledge gained through firsthand observation or experience, as distinguished from a belief based on what someone else has said") (quotations omitted)).

confirms my conclusions (a) that Plaintiff has failed to meet his burden to demonstrate that he worked hours in excess of 40 per workweek, and (b) that, even assuming he met such burden, Defendants have rebutted Plaintiff's showing and demonstrated the existence of genuine issues of material fact as to the Plaintiff's average weekly hours worked over the course of years. The undersigned accordingly recommends that summary judgment be **DENIED** as to Plaintiff's entitlement to overtime compensation.

*    *    *

"Upon determining that the Defendants violated the FLSA," Plaintiff further seeks summary judgment on the issues of (a) Plaintiff's entitlement to liquidated damages and (b) whether Defendants' alleged FLSA violation was willful, in which event Plaintiff would be entitled to recover three years of overtime damages. (ECF No. 44 at 9–10). Based on the analysis set forth above, the undersigned has recommended that summary judgment be denied as to several material elements of Plaintiff's claim. For the undersigned to determine either whether Plaintiff has proven that Defendants willfully violated the FLSA or whether Plaintiff has proven that he is entitled to liquidated damages would require inquiry into a but-for world. The better course is to leave the live factual disputes in this case to be resolved by the factfinder at trial. Accordingly, the undersigned further recommends that summary judgment be **DENIED** as to whether (a) Defendants willfully violated the FLSA's overtime provisions and (b) Plaintiff is entitled to liquidated damages.

## IV.   RECOMMENDATION

Based on the foregoing, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, (ECF No. 44), be **GRANTED**, in part, and **DENIED**, in part. The Motion should be **GRANTED** as to the undisputed facts that Defendants were Plaintiff's joint

employers and that Plaintiff was a non-exempt employee of Defendants. The Motion should in all other respects be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have **FOURTEEN (14) days** from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers, in Miami, Florida, this 18th day of February, 2026.

_____
LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE